**Mary Ann HETREED, Plaintiff–Appellant,**

v.

**ALLSTATE INSURANCE COMPANY, Defendant–Appellee.**

No. 97–1986.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 22, 1998.

Decided Feb. 6, 1998.

Michael L. Closen (argued), John Marshall Law School, Donald G. Weiland (argued), Chicago, IL, for Plaintiff–Appellant.

Brenda H. Feis (argued), Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for Defendant–Appellee.

Before WOOD, Jr., EASTERBROOK, and ROVNER, Circuit Judges.

EASTERBROOK, Circuit Judge.

Eleven months after she filed a suit charging her employer with sex discrimination, Mary Ann Hetreed was fired. She believes that the discharge was an act of retaliation for the suit and asked the district court to reinstate her pending the outcome of the main claim. Allstate, her former employer, agrees that the suit is causally related to the discharge but offers a reason other than retaliation: during discovery Hetreed revealed that she had used her position to obtain information about Allstate's defense of the suit and, when questioned, lied about what she had done. Hetreed was a senior manager in Allstate's audit department with supervisory authority over a staff of 40, and Allstate contends that it could not tolerate the continued presence of a deceitful auditor. Hetreed's motion for a preliminary injunction that would oblige Allstate to reinstate her was denied, leading to this interlocutory appeal.

Allstate proceeded in two stages, as did Hetreed's motion. In February 1997 Allstate suspended her, with pay, during an investigation of her actions and statements. She sought an injunction against the suspension, which the district court denied on March 7, 1997, remarking in the course of the hearing that continuation of her pay made it hard to see how the suspension could cause irreparable harm. Later that day Allstate fired Hetreed, who immediately filed a motion asking the district judge to hold Allstate in contempt of court. Because the judge had denied Hetreed's motion, there was no outstanding order that Allstate could have disobeyed; a judge's oral remarks during a hearing are not injunctions. *Bates v. Johnson*, 901 F.2d 1424 (7th Cir.1990). Allstate reasons from this that Hetreed's current appeal, from the denial on March 20 of the motion to hold Allstate in contempt, does not present any question about whether an injunction should have been entered. But the district judge, well understanding that Allstate had not violated any order entered on March 7, treated Hetreed's protest as a renewed motion for injunctive relief. The order explicitly denying that implicit request is appealable under 28 U.S.C. § 1292(a)(1).

While her charge of discrimination was pending before the EEOC, Hetreed asked a subordinate to generate a report of all payments to the law firm Allstate had engaged to defend itself against her claims. She forwarded the information to her own lawyers and produced the cover memorandum during discovery. When asked at her deposition how she came to access confidential corporate information, Hetreed denied obtaining the information herself and asserted that someone else had generated the information for an earlier audit year. This answer was false: the report, which Allstate had not yet seen, had been created at Hetreed's request on March 12, 1996, the day before her memo to her lawyer. Allstate opened an internal investigation, but Hetreed refused to discuss the subject without her lawyer. When the interview was held in her lawyer's presence she gave answers that were either incomplete and misleading (her view of things) or complete fictions (Allstate's view). After finding a memorandum from Hetreed to a subordinate ordering him to produce a "detail[ed]" and "total" report of all fees paid to the law firm defending the suit, Allstate suspended her pending further investigation, and Hetreed sought judicial relief. Testifying during the hearing on her motion for a preliminary injunction, Hetreed conceded that she had twice (at the deposition and during the internal interview) denied accessing information about the law firm and its fees but contended that "access" is a "very specific technology word" and does not mean obtaining access to but deals only with the physical steps of report generation—which her subordinate had performed. Hetreed asserted that it was thus proper to assure Allstate that she had never "accessed" the information in question and indeed did not "know how" to do so (although her memorandum to her own law firm asserted: "I ran a computer listing of all payments to [Allstate's lawyers] from April 11, 1995 through February 11, 1996."). Hetreed also contended that she told the subordinate to obtain this information because, as Allstate's auditor, it was her job to ensure that Allstate had retained competent counsel to defend against her suit—though she did not explain how billing information reveals legal acumen, why she did not report her findings candidly to her superiors, or why she immediately disclosed the information to her own lawyer. Allstate contends that Hetreed displayed poor judgment by using her position to obtain and disclose information of personal value, and that Hetreed's answers at the deposition and internal interview—of which "incomplete and misleading" is the description most favorable to Hetreed—made it impossible for Allstate to repose trust in her. Integrity is vital to any auditing position; for an audit manager, it is indispensable, Allstate concluded. Hetreed argued to the district court that Allstate should have understood that she was under stress and excused these foibles given her long and hitherto unblemished record, but the judge concluded that an employer is entitled to discharge an audit manager after losing confidence in the manager's honesty, and that Hetreed therefore had not established a likelihood of success on the merits of her claim that the discharge came in retaliation for the filing of the suit, as opposed to her conduct in the workplace after filing suit. The court added that because money damages are available if Hetreed prevails on the merits, "what was not a terribly strong case for irreparable injury disappears entirely."

■ Hetreed displayed poor judgment in using her position as an audit manager to obtain information of personal value. Her reply that she was entitled to investigate to learn whether Allstate deployed its money wisely in defense of the suit she filed could only have reduced Allstate's confidence in her ability to perform an auditor's job dispassionately. Lack of candor when questioned about the disclosure of information outside the firm is a further strike against an auditor, and especially against an audit manager. Another employer might have placed Hetreed on medical leave instead of firing her; she tells us that the events leading to the sex-discrimination suit, coupled with the stress of litigation, have left her depressed. But she did not ask for leave, the civil rights laws do not require firms to be humane, see *Pollard v. Rea Magnet Wire Co.*, 824 F.2d 557, 560 (7th Cir.1987), and it is impossible to describe the district court's conclusion—that a firm is entitled to senior auditors it can trust—as an abuse of discretion. Perhaps Hetreed will succeed in establishing that Allstate would have excused similar lapses by

an employee who had not filed a suit against the firm, and if so then the discharge may be called retaliatory. But the probability of success on this claim is not so great that the district court abused its discretion in allowing Allstate to have its choice of personnel in the interim. Cf. *LaChance v. Erickson,* —— U.S. ——, 118 S.Ct. 753, 139 L.Ed.2d 695 (1998); *Gilbert v. Homar,* —— U.S. ——, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997).

■ Likewise, the district court was entitled to conclude that Hetreed has not established irreparable injury. Loss of income caused by discharge from a job can be redressed by damages (plus prejudgment interest) at the conclusion of the case. Loss of face and reputation likewise may be palliated by a favorable decision at the end of the case as effectively as by interlocutory relief—which, although it comes sooner, is tentative and therefore does less to rehabilitate a reputation. *Sampson v. Murray,* 415 U.S. 61, 89–92, 94 S.Ct. 937, 952–54, 39 L.Ed.2d 166 (1974), held that neither a loss of income nor a loss of status, nor even difficulty in finding another job while the suit continues, is "irreparable injury" supporting interlocutory relief. When deciding whether to grant interlocutory relief, a judge must compare the costs of false negatives (the injury caused by wrongly denying relief to someone who ultimately prevails on the merits) against the costs of false positives (the injury caused by wrongly granting relief to a plaintiff who ultimately loses the case). See *American Hospital Supply Corp. v. Hospital Products Ltd.,* 780 F.2d 589 (7th Cir.1986). False negatives in discharge cases are not particularly costly; damages and prejudgment interest make up to prevailing plaintiffs what they lose if they are unemployed in the interim. False positives, by contrast, can create substantial and irreversible costs. A reinstated employee who lacks the firm's confidence may draw a salary while contributing little work of value; the reinstated employee, especially one in a managerial capacity, actually may reduce the productivity of other employees. Few employees have the wealth to post an injunction bond that could compensate the employer for these losses; Hetreed does not propose to return her salary and indemnify Allstate for any diminution in the output of the audit department if, at the end of the case, the judge or jury decides against her. Because the loss from false positives exceeds the loss from false negatives in cases of this kind, it would take a very powerful showing on the merits to justify reinstatement while the case is ongoing. Many of our cases have held that interlocutory relief in employment-discrimination cases should be rare. *Roth v. Lutheran General Hospital,* 57 F.3d 1446, 1453 (7th Cir.1995); *Shaffer v. Globe Protection, Inc.,* 721 F.2d 1121 (7th Cir.1983); *Ciechon v. Chicago,* 634 F.2d 1055, 1057–58 (7th Cir. 1980); *EEOC v. Janesville,* 630 F.2d 1254, 1258 (7th Cir.1980). Indeed, we have yet to decide a case holding that it is appropriate. The district judge did not abuse his discretion in concluding that this one should not be the first.

■ One final matter. Allstate's request for sanctions under Fed. R.App. P. 38 is denied. Hetreed's appeal is weak but not frivolous. See *Mars Steel Corp. v. Continental Bank N.A.,* 880 F.2d 928, 938 (7th Cir. 1989) (en banc). A defendant that believes the case feeble and wants an unsuccessful plaintiff to bear more of the costs of litigation should make an offer under Fed. R. Civ.P. 68 rather than request sanctions at each intermediate stage.

Affirmed.